BOOZER v. WEBB.

The managing member of a partnership, whose books were open to the inspection of the other partners, purchased in his own name a house and lot and paid for the same in largest part with a check on the bank drawn by him in the firm name, and in part with a debt due to the firm by the vendor. At that time the firm was solvent. Shortly afterwards the purchaser conveyed this house and lot to himself as trustee for the benefit of his daughter. This voluntary deed was drawn by another member of the firm, who was also the attorney for the firm. In these transactions there was no concealment or conspiracy. *Held*, that the partner might appropriate the partnership funds to the purchase of property and take title thereto in his own individual name ; that he thereby became a debtor to the partnership to the extent of the money drawn out by him ; but upon subsequent insolvency and dissolution of the firm, the receivers could not recover this property as partnership assets. *Maybin* v. *Moorman*, 21 *S. C.*, 346.

Before KERSHAW, J., Newberry, July, 1883.

In this case Hon. W. H. Wallace, Circuit Judge, sat in the place of the Chief Justice.

The facts of this case are stated in the opinion of the court. The Circuit decree, omitting its findings of fact, was as follows :

The object of this action is to set aside this conveyance of Webb, and subject the property to the debts of the said copartnership. The case was argued on the Circuit chiefly on the ground of fraud. It was contended by the plaintiffs that the voluntary deed of the defendant, Webb, creating a trust in the lot of land in favor of his daughter and her children, was fraudulent and void, as against creditors, under the statutes of Elizabeth. It, however, presents another aspect. In so far as the property was paid for by Webb from the assets of the firm, a trust resulted in their favor, and the property may be made liable to that extent to the demands of these plaintiffs.

The other doctrine, if applicable at all, would apply to the transaction only as a case of the voluntary conveyance of property in derogation of the rights of existing creditors, inasmuch as I find no actual fraud in the case. Regarding it as a case of constructive fraud of this character, the plaintiffs here would have no right of action. A voluntary deed is not void *per se,* but voidable as against existing creditors whose debts have not been paid. Such a creditor could not bring an action to set aside a deed, and subject the property to the payment of his debt, without having first exhausted his legal remedies. He must first have sued the debt to judgment, taken out execution, sold all the property liable to the same, and procured a return of *nulla bona* before he could bring such an action. *Hall* v. *Joiner,* 1 *S. C.,* 186 ; *Suber* v. *Chandler,* 18 *Id.,* 526 ; *Verner* v. *Downs,* 13 *Id.,* 450 ; *Ragsdale* v. *Holmes,* 1 *Id.,* 96 ; *Eigleberger* v. *Kibler,* 1 *Hill Ch.,* 113; 2 *Story Eq.,* 1521.

At law the deed is considered as a mere nullity. Creditors whose demands exist at the date of the deed may so regard it. Having obtained judgments, they may levy their executions and sell the lands conveyed by the deed. The purchaser under such sale may bring his action of ejectment and recover the land. In such an action it would be wholly immaterial whether the debtor was, at the time the deed was made, solvent or insolvent. It would only be necessary for the plaintiff to show that the deed was voluntary, that his debt existed at the time it was made, and that his debt remains unpaid. *Richardson* v. *Rhodus,* 14 *Rich.,* 96.

I will now proceed to apply these principles to the case in hand. If when the defendant, Webb, drew the money from the firm, which he invested in the lot in question, he left eight thousand dollars to his credit in the concern, he did not use the money of the copartnership to make the purchase. But to the extent that he reduced the amount below eight thousand dollars, he did so use the money of the firm. The balance to his credit on that day, January 6, 1873, as shown by the books of the firm, of which he was the managing partner, was $5,780.55.

Though the burden of proof was upon the plaintiffs to show, affirmatively, that Webb did use the money of the firm in making said purchase, yet, *prima facie*, they have established this fact by showing from the books that he had reduced the balance to his credit below eight thousand dollars, which sum it was his duty to contribute to the capital stock of the business. If any proper credits were omitted from this account, it devolved upon the defendants to show them. This they attempted to do by testimony tending to show that Webb had not received credit for the real estate contributed by him, estimated at twenty-five hundred dollars in value. But the complaint alleges that the sum of $11,315.68, for which Webb was allowed credit, included the real estate and all the answers admitted this allegation.

Defendants also insist that Webb should be allowed an additional credit on the account of $1,000 for his services as manager. Though the year had not expired, the demand seemed to me reasonable, since it was not said in the agreement that he should not draw his salary at any time during the year. With this exception no other credit has been made to appear in Webb's favor. It might be that a different state of the accounts would have been shown had the whole partnership account been taken before a referee. But it was upon the defendant's own motion, against the insistance of the plaintiffs, that the trial proceeded without this accounting.

From what has been said, it appears that the amount to the credit of Webb January 6, 1873, was only $6,780.55, and consequently Webb had no money in the firm which he had a right to apply to the purchase of property on his own account. To the extent, therefore, of the amount drawn from the firm and so

applied, the property purchased is charged with a trust in favor of the firm, and is liable for their debts. These plaintiffs, as receivers, are charged with the duty of collecting the assets and paying the debts of the copartnership. The resulting trust in favor of the firm is cognizable only in equity, and, therefore, could only be enforced by an action of this character. The plaintiffs, therefore, are properly in court, so far as regards that fund.

But a further question arises, whether they are entitled in this action to anything beyond the amount of $1,500 belonging to the firm, and applied to the purchase of the property. If the property should sell for more than fifteen hundred dollars, the overplus might be regarded as a gift by Webb to his daughter, void under the statute as a constructive fraud, as against existing creditors. In that view of it that balance would be equitable assets for the payment of the debts of W. H. Webb, but not *copartnership* assets, and, therefore, these receivers, as such, could not have an action to recover them. They are charged with the collection of the assets of the copartnership only, and have no authority to pursue the individual assets of the members of the firm in order to subject them to the debts of the copartnership. As to such balance, therefore, the plaintiffs would have no right of action, and would be entitled to no relief here. The creditors are not parties, and must be left to pursue such remedies as they may be advised that they have otherwise, if any.

As I do not find any fraudulent intent on the part of W. H. Webb, and the parties beneficially interested in the property are innocent of any wrong, the recovery here will be limited to the sum paid from the funds of the firm, without arrears of interest, and the defendant, Margaret E. Harrington, will be allowed to redeem, if she so desires, within a reasonable time.

It is ordered and decreed, that the defendant, Margaret E. Harrington, or W. H. Webb, as trustee, be at liberty to redeem the said lot of land, with the appurtenances, by paying to the plaintiffs the sum of fifteen hundred dollars, with interest thereon from the date of this decree, and the costs of this action. And in case of their failure so to redeem, that the master proceed, on the first Monday of January next, or some other convenient

salesday thereafter, to sell the said lot of land for cash and pay the proceeds thereof, first, to the costs of this action and the expenses of sale, and any taxes due on said property at the time of sale. Next, that he pay therefrom to the plaintiffs the sum of fifteen hundred dollars, with interest from the date of this decree, and that he hold any balance which may remain after such payments, subject to the trusts declared in the said deed of W. H. Webb in favor of the defendants, Margaret E. Harrington and her children, until proper orders be made by the court in respect of the fund, upon the application of Mrs. Harrington and her children, or any other person duly authorized on their behalf, and such orders may be taken herein at the costs of said applicants.

From this decree defendants appealed upon several exceptions; but they need not be considered, as this court considered only one point.

*Mr. Geo. Johnstone,* for appellants.

*Messrs. Y. J. Pope* and *Geo. S. Mower,* contra.

May 1, 1886. The opinion of the court was delivered by

Mr. Justice Wallace. On the first day of April, 1872, W. H. Webb, W. C. Parker, and L. J. Jones entered into a contract of partnership for the purpose of carrying on the business of tanning leather, making and selling saddles, harness, and shoes and of selling buggies, guano, corn, and other articles of merchandise. It was stipulated between them and stated in the memorandum of agreement signed by each of them, that each should contribute the sum of eight thousand dollars to the partnership capital, and that each should share equally in the profits and losses of the business, and that the business should be managed by Webb, with the consent of the other partners, and that books, exhibiting the business, should be kept by him which at all times were to be subject to inspection by the other partners.

When the partnership was entered into Webb was engaged in manufacturing, buying, and selling leather and leather goods. His stock on hand, tools of the trade, and the real estate owned, occupied, and used by him in the conduct of his business, were

transferred to the new concern at an agreed valuation, as his contribution to the capital stock. He was credited upon the books of the firm with the sum of eleven thousand, three hundred and fifteen dollars and sixty cents. For the amount of the excess in value, contributed by Webb, over the eight thousand dollars which he had agreed to contribute to the capital· stock he was to receive the note of the firm. Jones and Parker, too, were engaged in the business of tanning leather. It was agreed that all their stock, fixtures, and real estate owned and used by them in their business should be transferred to the new concern· at an agreed valuation, as their contribution to its capital. Accordingly Jones and Parker were credited with the agreed value of this property, to wit, with the sum of twelve thousand, eight hundred and forty-four dollars, and they, too, it was agreed, should receive the note of the firm for the sum of any excess in value contributed by them over the eight thousand dollars to be contributed by each partner. Parker owned an interest in the property contributed by him and Jones, estimated at about twenty-five hundred dollars. That all the property turned over to the concern by Webb is covered by the credit of eleven thousand, three hundred and fifteen dollars and sixty cents, is denied by Webb. The determination of this question is not necessary to the decision of the case according to the view we take of its essential issues.

In pursuance of the agreement between the partners, the firm entered upon the prosecution of its objects and transacted a large and flourishing business under the management, mainly, of Webb, who, it was agreed, should receive for his services as manager the sum of one thousand dollars per annum. Taking the statement of the books of the concern as to the amount of capital actually contributed by Webb as correct (and it may be assumed to be so for the purposes of this case), on January 6, 1873, Webb had reduced this credit to the sum of five thousand, seven hundred and eighty dollars and fifty-five cents. On that day there is nothing to show that the firm was not perfectly solvent. On that day Webb drew a draft on the account of the firm in bank for the sum of fifteen hundred dollars. This draft was cashed by the bank and charged to the firm. It was drawn and delivered

by Webb in part payment of the purchase money of a house and lot. The contract of purchase had been previously made for the sum of two thousand dollars. Other payments on the purchase had been made by Webb. One of these consisted of supplies furnished the vendor out of the partnership goods. At the time of the purchase Webb caused the conveyance to be made to himself, and he put his daughter, Mrs. Harrington, into posses-·sion of the property. On September 23, 1873, Webb conveyed this house and lot to himself as trustee for his daughter. This latter deed was drawn by L. J. Jones, one of the partners.

The partnership of Webb, Parker & Jones was dissolved by an order of this court, made in a proper proceeding before it on February 16, 1874, and receivers were appointed to administer the assets of the firm. At the date of this order the concern was insolvent. The receivers have brought this action to set aside the trust deed and to subject the property conveyed by it to sale for the payment *pro tanto* of the partnership debts. This relief is sought upon two grounds : First. Because this deed was a voluntary conveyance to the prejudice of creditors. Second. Because the property was paid for with partnership funds.

The first ground is decided against the plaintiffs by the Circuit Judge, and from this part of the Circuit decree no appeal has been taken. This question is not, therefore, before this court. It may be added, however, that this court concurs with the Circuit opinion upon this point, on the case as made on the trial below.

The second ground questions the right of a partner to acquire individual title to property paid for with funds drawn from the partnership. The law upon this question in this State has been stated in the recent case of *Maybin* v. *Moorman*, 21 *S. C.*, 346. The Circuit decree in this case was filed before the opinion in the case of *Maybin* v. *Moorman,* was delivered. A brief statement of the facts of that case will show that it is conclusive of this. Moorman, Maybin, and Chick were partners in a mercantile business. Moorman was bookkeeper. The other partners had access to the books. Moorman was paid a salary for keeping the books. He took one thousand dollars of partnership funds

and paid for bank stock with it and took the stock in his own name. There was no intentional fraud or wrong doing of any sort. Moorman and Chick died, and the firm proved to be insolvent. Maybin, the surviving partner, brought an action against the executor of Moorman to recover the bank stocks as partnership assets to pay debts. This court decided that Moorman had acquired individual title to the stock and was indebted to the firm for the one thousand dollars paid for it.

With reference to the case in hand, nothing appears in con-. nection with the original purchase of this property or the subsequent change in the nature of Webb's tenure of it which points to any purpose to prejudice the rights of creditors or partners. There was no concealment, for the check for fifteen hundred dollars was charged on the books of the firm to Webb on the day of its date. The conveyance to himself as trustee was drawn and approved by Mr. Jones, his partner and the attorney of the firm. There is no evidence of conspiracy, for at that time both Jones and Webb were men of means, and, as far as appears, able to respond individually to any existing liability of the firm. Under these circumstances the case of *Maybin* v. *Moorman, supra,* clearly decides that a partner may appropriate partnership funds to the payment of the purchase money of property for his own use, and become a debtor to the partnership for the money so used while he acquires individual title to the property so purchased.

It is, therefore, the judgment of this court that the judgment of the Circuit Court be reversed and the complaint dismissed.